--------
DAVID M. GLOVER, Judge *96 This is a property case in which Julie Shelton brought an action against Penny Carroll claiming parking rights pursuant to the language of a deeded easement and, alternatively, pursuant to claims of a prescriptive easement, and further claiming damages to her mailbox, real property, and hardwood floors in her house caused by redirected water after an excavation project undertaken by Carroll. Following a hearing, the trial court concluded the deed's language concerning ingress and egress also contemplated the need for parking on the easement; alternatively, a necessity for parking had been proved; and alternatively, a prescriptive easement for parking had also been established. With respect to Shelton's claims for water damages, the trial court concluded Carroll's excavation work had altered the flow of surface water and caused damage to Shelton's property. The trial court ordered Carroll to replace Shelton's concrete parking pad and redirect the flow of surface water away from Shelton's property (not to exceed $700) to pay the cost of the mailbox replacement ($54); it denied Shelton's claim for damages to her hardwood floors ($500), finding that she had not proved causation.
Carroll appeals from the portions of the trial court's April 12, 2017 judgment concluding that the deed's easement language includes parking; that Shelton proved a parking easement by necessity; and that Shelton also proved a parking easement by prescription. Shelton cross-appeals the trial court's denial of her claim for damages to her hardwood floors. All other claims have been abandoned.
With respect to Carroll's appeal, we find error in the trial court's construction of the deed language but affirm the alternate finding that Shelton proved a prescriptive easement for parking. Shelton concedes error regarding the trial court's finding of necessity. With respect to Shelton's cross-appeal concerning the hardwood-floor damage, we affirm the trial court's finding that causation had not been proved. As mentioned previously, the other issues have been abandoned.
Direct Appeal
In her direct appeal, Carroll contends the trial court erred in its construction of the easement language to include the right to park on the easement. We agree.
If possible, the intent of a grantor is ascertained from the language employed in the deed, examining its four corners. VanMatre v. Davenport , 2017 Ark. App. 703, 537 S.W.d 287. The initial determination of whether the deed is ambiguous rests with the trial court, and if a deed is not ambiguous, its meaning is a question of law for the trial court. C. & A. Constr. Co., Inc. v. Benning Constr. Co. , 256 Ark. 621, 509 S.W.2d 302 (1974). If the deed is ambiguous, then the trial court may consider parol evidence to aid in determining the parties' intent, and the meaning of the deed becomes a question of fact. Id. On appellate review, we examine the trial court's determination of whether an ambiguity exists, and if we conclude there is no ambiguity, then we examine the deed's meaning as a question of law upon de novo review. Maxey v. Kossover , 2009 Ark. App. 611, 2009 WL 3029310.
In the trial court's April 12, 2017 judgment, it explained, "Further, from the Court's examination of the property and proof presented, the Court finds that when the easement was created, and as the easement *97 was conveyed down to [Shelton], the parties must have contemplated that the easement included more than just the right to drive across it to [Shelton's] house. The Court finds that it is unreasonable to limit the use of the easement to just driving in and out." In so holding, the trial court, at a minimum, impliedly found the easement language to be ambiguous and then found that the parties must have contemplated more from the easement than just ingress and egress. We disagree.
Here, the original document that created the easement in 1968 is styled "Easement for Road Right of Way" and contains the following pertinent language:
THAT I, Olive P. Ellis ... grant ... an Easement for ingress and egress over and across the herein described lands in Eureka Springs, Carroll County, Arkansas, to-wit:The SW ½ of Lot 15, Block 163, as designated on R&A Survey Plat. Said lands being further designated and described as Access Easement on Plat of Survey prepared by Crafton & Tull, Consuluting Engineers, Rogers, Arkansas, dated October 15, 1968, filed in Plat Book "A," Page 36, in records of Western District, Carroll County, Arkansas.
That Grantees shall be responsible for the building of and maintaining of a road way across the above described property.
Grantor reserves unto herself, her heirs, successors and assigns the express right to use any road built upon the above described property for ingress and egress to adjoining property.
(Emphasis added.) The 1988 deed to Shelton provides in pertinent part:
ALSO Easement for Road Right of Way , the SW 1/2 of Lot 15, Block 163, as designated on Riley and Armstrong Survey. Said lands being further designated and described as Access Easement on Plat of Survey prepared by Crafton and Tull Consulting Engineers, Inc., Rogers, Arkansas, dated October 15, 1968, filed in Plat Book "A" Page 36 in records of Western District, Carroll County, Arkansas.
(Emphasis added.) And the 2013 deed to Carroll provides in pertinent part:
SUBJECT TO a road easement over and across the Southwest Half (SW 1/2) of Lot 15, Block 163, Riley and Armstrong Survey, said easement being recorded in Book 67 at Page 498 in the Circuit Clerk's Office, Western District, Carroll County, Arkansas.
(Emphasis added.)
Even though we held there was error in the trial court's decision regarding the easement language itself, that is not the end of the story. The trial court alternatively found that Shelton had proved a prescriptive easement for parking within the express easement for ingress and egress.[1] Carroll challenges the trial court's prescriptive-easement finding also. We find no clear error in that finding.
*98 At the trial of this case, Shelton offered several witnesses who testified about Shelton, her family, and friends parking on the easement consistently over a combined period of almost thirty years. In opposition, Carroll offered witnesses who testified that any such parking was very sporadic.
The April 12, 2017 judgment provides in pertinent part:
7. The Court further finds that [Shelton] and her family and guests have parked on the easement since [Shelton] acquired her property in 1988. [Shelton] has requested the Court to find that she has established an easement by prescription for parking on the easement. [Carroll] argues that [Shelton] has not established the elements required for acquisition of property by adverse possession.... [Shelton] is not seeking to acquire fee title to [Carroll's] property. Rather, [Shelton] seeks to establish a prescriptive right to park on the easement by virtue of her adverse use of the easement for parking purposes throughout the years of her ownership. [Carroll] counters that [Shelton] has not met the requirement of continuous use to the extent required to establish an easement by prescription. The Court finds that while the use of the easement for parking by [Shelton] and her family and guests has not been continuous in the respect contended by [Carroll], that is, it has not been uninterrupted, the Court finds that the use of the easement for parking by [Shelton] and her family and guests has been frequent, consistent and systematic since at least 1988 and has been frequent, consistent and systematic enough to constitute continuous use for purposes of establishing an easement by prescription for parking. The Court finds that [Shelton's] use of the easement for parking throughout the time period involved was adverse to the rights of [Carroll] and her predecessors-in-title sufficient to establish an easement by prescription in favor of [Shelton].
8. The Court finds that allowing [Shelton] and her family and guests to park on the left side of the easement will not in any way interfere with [Carroll's] access to or use of the remainder of her property. Further, it will not in any way hinder [Carroll] from also using the easement for access to her property. Therefore, the Court hereby declares that [Shelton] and her successors in interest have the right to park on the left side of the easement viewed from Wheeler Street when necessary.
A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. Edge v. Sutherland , 2015 Ark. App. 305, 462 S.W.3d 690. Prescriptive easements, like adverse possession, are not favored in the law because they necessarily work corresponding losses or forfeitures in the rights of other persons. Id. In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. Id. Our supreme court has said that the statutory period of seven years for adverse possession applies to prescriptive easements. Id. Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. Id. Mere permissive use of an easement cannot ripen into an adverse claim without clear action, that places the owner on notice. Id. The plaintiff bears the burden to show by a preponderance of the evidence that there has been adverse, not permissive, use of the land in questions. Id. In reviewing a finding of fact regarding a prescriptive easement, *99 our court reviews the record de novo and will not reverse unless the finding is clearly erroneous; i.e., unless this court is left with a definite and firm conviction that the trial court made a mistake, giving due deference to the trial court's superior position to determine matters of credibility. Ridenoure v. Ball , 2011 Ark. App. 63, 381 S.W.3d 101.
In arguing that the trial court clearly erred in finding Shelton proved she had established a prescriptive easement for parking, Carroll's primary arguments are: 1) the use was not continuous, and 2) there were no circumstances in addition to the use that indicated it was not merely permissive. Carroll also attempts to classify the portion of land involved in this matter as unenclosed in order to bring it within the line of cases holding that, with unenclosed land, use of it would be deemed permissive because it would be unreasonable to hold the landowner responsible for setting up guard to keep persons from using his or her property.
The trial court found Shelton's and her friends' and family's use of the easement for parking was sufficiently continuous to establish prescription-"more than fitful, irregular, or occasional." Our de novo review of the evidence does not leave us with a definite and firm conviction that the trial court made a mistake in this regard. Further, we are not convinced with Carroll's comparison to unenclosed property. Here, not only is the property at issue within the City of Eureka Springs, it is in a tightly inhabited, compact area, much different from a wide-open, unenclosed field, making the use of the easement for parking even more clearly known to the owners and adverse to their interests-not the permissive use urged by Carroll.
Following our de novo review of the record, and under the circumstances presented here, we find no clear error in the trial court's assessment of the evidence in finding Shelton proved a prescriptive right to parking within the existing easement for ingress and egress.
Cross-Appeal
The trial court found the excavation work had changed the flow of the surface water and ordered Carroll to fix the flow and pay for the replacement of the concrete parking pad and mailbox. The trial court was not convinced, however, that the cupping of the hardwood floors was caused by the excavation problems and resulting change in surface-water flow. Our de novo review of the record does not convince us the trial court clearly erred in finding no causation. The trial court was in a superior position to assess the evidence it heard, and it fell short of convincing the court the floor damage was caused by the excavation problems. We are not left with a definite and firm conviction the trial court made a mistake.
Affirmed on direct appeal; affirmed on cross-appeal.
Shelton concedes error in the trial court's finding that necessity for parking had been proved, and therefore it is not necessary to discuss that point.