Cite as 2020 Ark. App. 478

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV–20–37

| | |
|---|---|
| | **OPINION DELIVERED:** OCTOBER 21, 2020 |
| CROSS COUNTY SCHOOL DISTRICT | |
| | APPEAL FROM THE CROSS COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 19CV-18-138] |
| | |
| V. | HONORABLE E. DION WILSON, JUDGE |
| | |
| BETH TURBIVILLE; JOSEPH W. TURBIVILLE; MELISSA WHITE; AND ARTHUR C. WHITE | AFFIRMED |
| | |
| APPELLEES | |

## ROBERT J. GLADWIN, Judge

The Cross County School District (hereinafter "CCSD") appeals the June 27, 2019 order of the Cross County Circuit Court denying its petition for a prescriptive easement in favor of appellees Beth Mann Turbiville, Joseph W. Turbiville, Melissa White, and Arthur C. White. Because the CCSD failed to meet its burden to show by a preponderance of the evidence that there has been adverse and not permissive use of the land in question, we affirm.

I. *Facts and Procedural History*

The land at issue in this appeal is part of a tract of property located in Section Seven (7), Township Nine (9) North, Range Four (4) East in Cross County, Arkansas. It consists of approximately 148 acres that are almost entirely wooded with no structures having been erected on it. The property (hereinafter the "Mann property") was owned for many years

by Margaret and Milton Mann. In 2001, the Manns transferred ownership of the Mann property to their children, Terry Mann and appellee Beth Mann Turbiville. In 2009, Terry Mann transferred ownership of his undivided one-half ownership of the property to his daughter, appellee Melissa White. The Mann property is currently owned by appellees Turbiville and White, with each owning an undivided one-half interest, and each residing outside the state of Arkansas, in South Carolina and Georgia, respectively. Don Milam, Mrs. Mann's brother, has been the caretaker of the Mann property since the Manns owned it and continues in that role for the appellees.

Over the Mann property runs a narrow road that previously had been used primarily as a logging road by the Mann family and their invitees. This road provided access to the Mann property from Cross County Road 303 for persons logging timber off the property and for the owners and invitees to hunt and otherwise enjoy the Mann property.

On or about December 31, 1992, Joe and Constance Ferguson (now Fahy) acquired ownership of approximately twelve acres of property adjacent to the northeast corner of the Mann property. The Fergusons acquired ownership by conveyance from Ruby Williams, Ms. Ferguson's aunt. Sometime after 1992, the Fergusons began to use the road on the Mann property to access their property from Cross County Road 303, although the parties dispute the nature of the Fergusons' use of the road.

When the Fergusons decided to build a house on the twelve acres in the latter part of 1994, they realized that the bank required a survey and a permanent easement to access their property because it was landlocked by the Mann property off County Road 303 to the west of the Fergusons' property. After discussions between the Fergusons, Ms. Williams,

2

and the Manns about the use of the road, the Fergusons and Ms. Williams took a permanent-easement document that had been drafted by Ms. Williams to the Manns to have them sign it; however, neither the parties nor Ms. Williams has been able to locate an official record—or even a copy—of the alleged permanent easement allegedly signed by the Manns, who are both now deceased.

After the Fergusons built the house, the road was used regularly by them, and the Fergusons improved the road by widening, grading, and placing gravel on it. In addition, Mr. Ferguson installed an iron gate across the entrance to the driveway of the house at County Road 303, which remained in place from 1994 to 2009. It is undisputed that he gave the Manns a key to the gate.

The Fergusons subsequently deeded their twelve acres of property in lieu of a foreclosure in 2007 to Federal National Mortgage Association. Nothing in the foreclosure documents or in the deeds connected with the foreclosure reference any easement on the property. In July 2010, the CCSD purchased the twelve-acre tract from Federal National Mortgage Association, and likewise, nothing in the deed conveying the property to the CCSD references any easement.

The CCSD used, maintained, and improved the road from the time it took ownership of the property in 2010. After Turbiville and White refused to sign a permanent easement in favor of the CCSD regarding the road on June 27, 2018, the CCSD filed a petition for easement by necessity[1] against Turbiville and White seeking a permanent,

---

[1]Although the CCSD's complaint was titled "Petition for Easement by Necessity," the body of the petition alleges a claim for an easement by prescription, not necessity. Moreover, the CCSD did not address its claim for an easement by necessity in its posttrial

3

nonexclusive access easement—consisting of the road—over, on, upon, and across the Mann property for the purpose of vehicular and pedestrian ingress and egress to and from the property owned by the CCSD and related appurtenances in the vicinity of the property. The CCSD requested that the easement run with the land with the owner of the land to be responsible for any costs or liabilities related to the operation, upkeep, or maintenance of the easement.

Appellees filed an answer to the petition on August 1, and the CCSD filed a reply on August 17. After discovery and attempted mediation, a bench trial was held on April 24, 2019. The testimony at trial, to the extent set forth and relied on by the circuit court in its order, is summarized as follows.

Jerry Buchanan, the CCSD director of transportation for twenty-eight years, testified that he knew that the CCSD had purchased in 2010 a house built by the Fergusons. Mr. Buchanan testified that he remembered as far back as 1990 or 1991 that there was a road leading to a cabin and later to the Fergusons' house. Mr. Buchanan testified that the Fergusons had used the old logging road during their ownership of the property and had made substantial improvements to it. Mr. Buchanan noted that the Fergusons had also used an alternate road to access their property.

Mr. Buchanan explained that after the CCSD purchased the house from the Fergusons, he had performed maintenance on the road since the summer of 2010, including grading the road over time, putting in an estimated eighty to ninety hours of his time. He

---

brief. The circuit court correctly found that the CCSD had essentially abandoned its claim for an easement by necessity; moreover, that issue has not raised on appeal.

4

testified that he never had been blocked from using the road and that he had never seen a document giving anyone an easement over the property in question. Initially, several Teach for America teachers used the road and lived in the house from 2010 to 2013 when they taught at the CCSD. Mr. Buchanan explained that the house sat vacant for approximately six months after those teachers moved out, and that a CCSD coach then moved in and lived there from 2013 through 2015 and was able to use the road. After the coach moved out, the house was vacant for approximately a year before Nathan Morris, the CCSD superintendent, moved into the house and has used the road since that time.

Wayne Menley testified that he works for Miller Newhart Engineering as a consultant engineer. He testified regarding two potential alternate routes to the house in question including the costs of each route and the ongoing upkeep that would be required for each of the routes after completion.

Nathan Morris testified that he is the current superintendent of the CCSD. He explained that he has lived in the house in question since July 2017 and that there has been no hinderance on the use of the road. He noted that in 2017, the CCSD performed work on the road, including removing leaves, filling potholes, and adding gravel to the road. Mr. Morris stated that in 2019, the CCSD had removed limbs and trees and had graded the road. He confirmed that the CCSD house was vacant for one full year before he moved into it. He clarified that the CCSD bought the property in a land-foreclosure sale; noting that no title work was done, no easement existed at the time of purchase, and no title insurance was purchased when the property was purchased because the CCSD bought the property "as is." Mr. Morris stated there is no reference to any easement in the deed to the CCSD. Mr.

Morris further testified that alternate routes to the house in question could be accessed by an all-terrain vehicle and that no one has ever precluded the CCSD from using the road. He noted that the CCSD is currently the primary user of the road.

Appellee Beth Mann Turbiville testified that she owns a one-half, undivided interest in the Mann property and that her uncle, Don Milam, is the caretaker of the Mann property. Ms. Turbiville explained that she had given Mr. Milam the authority to allow people to use the road in front of the Mann property. She acknowledged that in 2010, she was asked to—and did—sign a temporary easement for the CCSD to use the road to access its property. She testified that she objects to a permanent easement but does not object to the CCSD's use of the road.

Appellee Melissa White testified that Terry Mann, her father, gave her a deed to his one-half, undivided interest in the Mann property and that she expects to give ownership of her land to her children.

Terry Mann testified that he is Ms. White's father. He noted that the Mann property has been in their family for eighty to ninety years. He testified that he has visited the Mann property once every three months and that he has not seen any major improvements made to the road.

Don Milam testified that he is eighty-three years old and has lived in the area all his life. Mr. Milam explained that the road in question was a logging road. He stated that the Fergusons put gravel on the road; that it washed out at one time; and that no major changes had been made to the road other than white rock having been put on the road. Mr. Milam testified that he has been the caretaker of the Mann property and that he told the CCSD

superintendent, Mr. Morris, that he was authorized by the owners to tell the CCSD that they could use the road.

Ruby Williams testified by deposition that she is ninety-four years old. She stated that she grew up in the area and was a part of the Harvey family that owned land just north of the Mann property. Ms. Williams testified that she acquired land and deeded twelve acres of it to her niece, Constance Ferguson, on which the Fergusons built a house. She confirmed that the house and twelve acres were subsequently deeded to the CCSD. Ms. Williams testified that there was a road going back to the twelve acres and that it was a dirt road back then but that later the Fergusons graded and put gravel on it. Ms. Williams stated that she has known about the road since she was a little girl and that she has never known it to be blocked and had never been prevented from using it.

Ms. Williams testified that the Fergusons told her that they needed a right-of-way to get a loan from the bank to build a house. Ms. Williams stated that she went to her long-time friend and distant cousin, Margaret Mann, and was told that the Manns would sign a right-of-way. Ms. Williams, who had worked for an attorney, stated that she drew up the easement and that it was not limited in any way and was not limited to just the Fergusons. Ms. Williams testified that she took the Fergusons to the Manns' house and had them sign the easement.

Constance Ferguson (now Fahy) also testified by deposition that she and her husband, Joe, now deceased, decided to build a house on the twelve-acre lot obtained from Ms. Williams. She noted that there was an old logging road that was accessed through County Road 303, and that was the way she and her husband accessed their property. She

7

acknowledged that there was an alternate to get to the other side of the lake, but that was used only when they were going to the lake to fish. Ms. Fahy stated that she and her husband cleared their twelve acres with a bulldozer and used the road in question. She noted that as they were about to build their house, they realized that they needed to get a construction home loan and that the bank required a survey and an easement across the Mann property. She stated that her aunt, Ms. Williams, had been a secretary for an attorney and for postal inspectors and that she knew how to draw up legal documents and was close friends with, and a distant cousin of, Mrs. Mann. Ms. Fahy testified that Ms. Williams drafted the easement and went with her husband and her to the Manns' house to get it signed. Ms. Fahy stated the easement was a permanent easement and that there were "no ifs, ands, or buts about it." Ms. Fahy testified that after the house was built, they hosted many events on their property, that their address was 540 County Road 303, and that the Manns never challenged their use of the road. Ms. Fahy also noted that Mr. Milam likewise never challenged them over the use of the easement; never told them that they could not use the road; and never told them that they were using the road only with permission.

The circuit court—after hearing evidence in person and considering Ms. Wilson's and Ms. Fahy's deposition testimony, the exhibits, and the parties' respective posttrial briefs—entered its June 27, 2019 order finding that the CCSD had failed to prove by a preponderance of the evidence the elements necessary to gain a prescriptive easement and denying the prescriptive-easement relief requested by the CCSD. From that order, the CCSD filed its timely appeal on July 24, 2019.

8

II. *Standard of Review and Applicable Law*

In *Clark ex rel. Clark v. Eubanks*, 2019 Ark. App. 49, at 3–4, 570 S.W.3d 506, 508–09, we reiterated the applicable standard of review and relevant law regarding prescriptive easements:

> We review equity cases de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.
>
> A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that his or her use has been adverse to the true owner and under a claim of right for the statutory period. The statutory period of seven years for adverse possession applies to prescriptive easements.
>
> Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim of right are being exerted. Mere permissive use of an easement cannot ripen into an adverse claim without clear action, which places the owner on notice. Some circumstance or act in addition to, or in connection with, the use that indicates the use was not merely permissive is required to establish a right by prescription. The plaintiff bears the burden of showing by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question.

(Internal citations omitted.)

III. *Discussion*

The CCSD seeks a reversal of the circuit court's denial of its claim for a prescriptive easement arguing that the decision is clearly erroneous. The CCSD cites *Willows, LLC v. Bogy*, 2013 Ark. App. 59, in which the court affirmed the circuit court's grant of a

9

prescriptive easement on the basis of thirty-nine years of continuous use of a farm road with the only additional factor mentioned being the improvement of the road by the installation of a steel pipe. *Id*. at 4. Hass, the landowner in *Willows*, claimed that the use of the land had been permissive, but the circuit court found that the Bogys used the land overtly and adversely. The CCSD maintains that the overt use in *Willows* is slight compared to the facts in this case, which involve the use of a road for over ninety years and what it claims is intense and adverse use from 1994 to present. Citing *Carroll v. Shelton*, 2018 Ark. App. 181, 547 S.W.3d 94, the CCSD notes that this court approved use of an easement that is "more than fitful, irregular, or occasional" as being adverse. *Carroll*, 2018 Ark. App. 181, at 7, 547 S.W.3d at 99.

The CCSD argues that the unrefuted testimony of the witnesses confirmed that the Fergusons built a house at the end of the alleged easement; the alleged easement was improved and maintained by the Fergusons before and after the construction; the Fergusons lived in the house continuously for fifteen years with traffic and activity occurring regularly and intensively on the property in question; and that the Ferguson's usage was followed by continuous, regular use of the house and easement by the CCSD.

The CCSD submits that the continued use of the road went on for many years with the Manns remaining silent despite knowing about the house constructed on the twelve-acre tract and the passage over the alleged easement as a driveway to the house. The CCSD further asserts that the acts of grading and putting gravel on the alleged easement were obvious and notorious acts. Further, even without a written and signed document being presented to the circuit court, the CCSD urges that the testimony by Ms. Wilson and Ms.

10

Fahy regarding the Manns' signing a permanent easement in favor of the Fergusons in 1994 is significant evidence of notice to the Manns. And the CCSD concludes that even if these acts were not sufficient, the gate that was installed by the Fergusons during the construction of the house that remained in place for fifteen years at the point where the driveway to the house was entered from County Road 303 constitutes sufficient notice. The CCSD claims that because Mr. Mann was given a key to that gate and never challenged the Fergusons' use, the Manns acquiesced in the easement by prescription.

The CCSD claims that the current owners are charged with the same knowledge of those adverse acts. Ms. Turbiville testified that she knew that people were driving back and forth on the road and that she never took any steps personally to intervene to indicate that she wanted that usage to cease. And Ms. White testified that, although she thought the road use was a burden on her land, she never spoke up to interfere with the CCSD's use of it. The CCSD points out that Terry Mann, who testified that he routinely was on the Mann property during the period from 1994 to 2009, never made contact with the Fergusons. The CCSD claims that surely he saw the gate at the end of the driveway, yet he never challenged the Fergusons about it.

The CCSD urges that the usage made of the roadway across the Mann property over the years and the adverse acts charged against the Manns have ripened the usage of the road into an absolute right to an easement by prescription to the roadway from County Road 303 to the twelve acres and house now owned by the CCSD.

We disagree and hold that the circuit court was not clearly erroneous in finding that the CCSD failed to establish a prescriptive easement because the evidence before us supports

11

the finding that the use of the road in question had been permissive in nature over the years and not adverse to appellees or their predecessors in title.

A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. *Edge v Sutherland*, 2015 Ark. App. 305, at 4, 462 S.W.3d 690, 693–94. Like adverse possession, prescriptive easements are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons. *Id*. In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Id*. at 4–5, 462 S.W.3d at 694. The statutory period of seven years for adverse possession applies to prescriptive easements. *Id*. Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Id*. Mere permissive use of an easement cannot ripen into an adverse claim without clear action that places the owner on notice. *Id*. Here, the CCSD, as petitioner, bears the burden of proof by a preponderance of the evidence that there has been adverse, not permissive, use of the land in question. *Id*.

Supporting the circuit court's finding that the CCSD failed to prove that its use of the property in question has been adverse and without permission is testimony from the CCSD's own witness, Jerry Buchanan, head of maintenance for the CCSD for twenty-eight years, who testified that he obtained permission from Don Milam, brother of Margaret Mann and caretaker of appellees' property, for the CCSD to use the road. Mr. Milam confirmed that he was the caretaker of the Mann property and that he gave permission to a

12

board member of the CCSD for the district to use the road. Appellees Turbiville and White as well as Terry Mann testified that permission had been granted to the CCSD and to previous owners to use the road because "such was the neighborly thing to do."

The deposition testimony from Ms. Williams and Ms. Fahy that the Manns had signed a permanent easement across the Mann property is unconvincing to establish that the Manns authorized a permanent easement that ran with the land. Both Ms. Williams and Ms. Fahy acknowledge that no survey was performed to describe the alleged easement with a proper legal description. Wayne Menley, a consultant engineer for Miller Newhart Engineering, testified that a legal description must be obtained to prepare an easement, which suggests that no official easement was ever granted. Most importantly, no one involved was able to locate the alleged permanent easement purportedly signed by the Manns. No such document was recorded in the Cross County land records. Likewise, the document was not in the possession of Ms. Williams, who testified that she had made a diligent search for it. There was no copy of the purported document either in the possession of Ms. Fahy, any bank that might have serviced the Ferguson's loan, or with the CCSD. Moreover, none of the deeds offered into evidence make any reference to any easement.

The Arkansas statute of frauds, *see* Ark. Code Ann. § 4-59-101(a)(4) (Supp. 2019), requires that any transaction relating to land be in writing. Because no written record can be located of any easement related to the Mann property, the CCSD is unable to establish what specific property was described in the alleged easement, the length of the term thereof, and whether the alleged easement was personal to the Fergusons or instead ran with the land.

13

Despite evidence of some discussions between the Manns, the Fergusons, and Ms. Williams concerning the Fergusons' use of the road, insufficient proof exists that the Manns signed a permanent easement burdening their land. According to Ms. Williams, she was a lifelong friend and distant cousin of Mrs. Mann. The close friendship and kinship suggest that any right to use of the road lent by the Manns would have been permissive rather than adverse. As Terry Mann testified, his parents may have given permission for the Fergusons to use the road in the form of a temporary, personal grant of use, but there is insufficient proof that a permanent easement was granted.

The circuit court carefully considered all the proof and found that the CCSD did not meet its burden of proof to show overt activity sufficient to put appellees on notice that the CCSD intended to claim against them. While we acknowledge that there was some evidence introduced that the CCSD and its predecessors had contributed to the maintenance of the road by grading it and putting down gravel or chat at various times, we hold that the circuit court's finding that such efforts were not so compelling and overt as to put appellees on notice that CCSD was claiming adversely to them was not clearly erroneous.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Mixon & Worsham PLC*, by: *Donn Mixon*, for appellant.

*Glover & Roberts*, by: *Danny W. Glover*, for appellees.

14